IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG STRANAHAN | : | CIVIL ACTION |
| v. | : | |
| UNITED STATES OF AMERICA | : | NO. 09-2725 |

**MEMORANDUM**

Padova, J.                                                                                                                August 19, 2010

Plaintiff Craig Stranahan commenced this action seeking relief from an allegedly improperly assessed Trust Fund Recovery Penalty pursuant to Section 6672(a) of the Internal Revenue Code. The United States has counterclaimed for failure to pay federal employment taxes. Presently before the Court are the Government's Motion for Summary Judgment and Plaintiff's Motion for Judgment on the Pleadings, which Plaintiff has requested we treat as a summary judgment motion. For the reasons stated below, both Motions are denied.

**I.    BACKGROUND**

Plaintiff was the president of the Pennsylvania Gear Corporation ("Pennsylvania Gear") from at least January 1, 2002, to December 30, 2002. (Craig Stranahan Dep. at 33.) Towards the end of 2002, Pennsylvania Gear sought bankruptcy protection in the Eastern District of Pennsylvania pursuant to Chapter 11 of the Bankruptcy Code, and on December 16, 2002, it filed Bankruptcy Schedules, a List of Equity Security Holders, and a Statement of Financial Affairs, which Plaintiff signed. (Gov't Ex. 201.) Bankruptcy Schedule E, which listed creditors holding unsecured priority claims, identified the IRS as holding a claim for $45,095. (Id. at 12.) On December 30, 2002, the bankruptcy case was involuntarily converted to a Chapter 7 liquidation. (Pl.'s Ex. 104). Plaintiff was instructed to turn over all records and assets to the bankruptcy trustee. (Henry Stranahan Dep. at 52.)

After Pennsylvania Gear filed for bankruptcy and before the case was converted to a Chapter 7 liquidation, Plaintiff signed several Pennsylvania Gear checks. One such check, dated December 27, 2002, was payable to cash in the amount of $43,600, and included the notation "H&W Associates" in the memo field. (Gov't Ex. 301 at 1, 5.) The checks were paid from Pennsylvania Gear's checking account at Commerce Bank. (Id.) After the check for $43,600 was paid, Pennsylvania Gear's checking account at Commerce Bank had a balance of $52.11. (Id. at 1.)

The bankruptcy trustee filed a series of adversary complaints against several entities, including H&W Associates. (Pl.'s Ex. 106 ¶ 1.) On January 8, 2008, the bankruptcy trustee executed a settlement agreement with H&W Associates, Henry Stranahan, Stranahan Charitable Trust, Stranahan Family Business Partnership, L.P., and Pennsylvania Manufacturing Technologies, Inc. (the "Settling Defendants"). (Id.) Pursuant to the Settlement Agreement, the Settling Defendants agreed to forward the sum of $40,000.00 to the bankruptcy trustee. (Id. ¶ 4.) The parties also agreed that the bankruptcy estate would "make distributions to creditors, including any timely filed and valid tax claims by the IRS and other Governmental Units, pursuant to Section 726 of the Bankruptcy Code." (Id. ¶ 5.) The Settling Defendants and the bankruptcy trustee further agreed to release one another "from any and all claims, actions, liabilities, debts, acts and omissions, causes of action, legal proceedings and executions of any type whatsoever. . . ." (Id. ¶ 6.)

On July 25, 2007, pursuant to 26 U.S.C. § 6672, the IRS assessed a civil penalty against Plaintiff for unpaid trust fund taxes for the third and fourth quarters of 2002. (Gov't Exs. 101-03.) The initial penalties were in the amounts of $7,355.86 for the third quarter of 2002, and $33,501.05 for the fourth quarter of 2002. (Id.) As of June 21, 2010, Plaintiff owed $45,130.69 on account of the trust fund recovery penalty. (Gov't Ex. 103.)

Plaintiff commenced the instant action on June 16, 2009. He alleges that the Government improperly assessed the Trust Fund Recovery Penalty against him. On October 1, 2009, the Government counterclaimed for failure to pay federal employment taxes.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion, and identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court [] that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must – by affidavits or otherwise as provided in this rule – set forth specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"In evaluating the evidence, we take the facts in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in [her] favor." Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 680 (3d Cir. 2003) (internal quotation omitted). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000). Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. Callahan v. AEV, Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)).[1]

## III. DISCUSSION

In its Motion for Summary Judgment, the Government argues that it is entitled to judgment in its favor because Plaintiff was responsible for paying over Pennsylvania Gear's trust fund taxes in the third and fourth quarters of 2002 but willfully failed to do so, choosing instead to use Pennsylvania Gear's funds to make other payments at a time when he knew the taxes had not been paid. In his Motion, Plaintiff argues that he is entitled to judgment in his favor because he has presented evidence that he did not violate section 6672 of the Internal Revenue Code, but rather truthfully reported Pennsylvania Gear's payroll tax obligation in that company's bankruptcy schedules. He further contends that payment of that obligation became the sole responsibility of the

---

[1] Although Plaintiff initially styled his Motion as a Motion for Judgment on the Pleadings pursuant to Rule 12(c), he subsequently requested that we treat it as a summary judgment motion. Plaintiff has appended a statement of undisputed facts, deposition excerpts, and other documents in his Response to the Government's Motion for Summary Judgment. Accordingly, we will convert his Motion for Judgment on the Pleadings, together with the Response he subsequently submitted and its attached exhibits, to a Rule 56 motion. Additionally, we note that the standard applied by the court in ruling on a Rule 12(c) motion is identical to that applied to Rule 56 motions. See Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1998)).

4

bankruptcy trustee after Pennsylvania Gear's bankruptcy case was converted to a Chapter 7 liquidation.

The Internal Revenue Code requires employers to withhold federal social security and income taxes from the wages of their employees. 26 U.S.C. §§ 3102, 3401, 3402. The taxes an employer withholds constitute a fund in trust for the benefit of the United States. 26 U.S.C. § 7501(a). The Internal Revenue Code further provides that

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). Tax assessments by the United States are presumptively correct, and once the Government introduces certified copies of the assessment, the taxpayer bears the burden of disproving liability. Vanicsko v. United States, Civ. A. No. 07-1087, 2009 WL 3199546, at *3 (E.D. Pa. Sept. 30, 2009) (citing Brounstein v. United States, 979 F.2d 952, 954 (3d Cir. 1992)). For an individual to be subject to liability under § 6672, he or she must meet two prerequisites: (1) "the individual must be a 'responsible person,'" and (2) "his or her failure to pay the [withholding] tax must be 'willful.'" Greenberg v. United States, 46 F.3d 239, 242 (3d Cir. 1994) (citing United States v. Carrigan, 31 F.3d 130, 133 (3d Cir. 1994); and Brounstein, 979 F.2d at 954).

A responsible person, as that term is used in § 6672, is "an officer or employee of a corporation . . . under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). In other words, a responsible person is one who is "'required to collect, truthfully account for or pay over any tax due to the United States.'" Greenberg, 46 F.3d at 242-43 (quoting Carrigan,

5

31 F.3d at 133). "'Responsibility is a matter of status, duty, or authority, not knowledge.'" Id. at 243 (quoting Brounstein, 979 F.2d at 954). A responsible person need not have exclusive control over the corporation's finances, but must have at least significant control over disbursement of the corporation's funds. Id. (citing Brounstein, 979 F.2d at 954; and United States v. Vespe, 868 F.2d 1328, 1332). To determine whether an individual is a responsible person for the purposes of § 6672, the court must consider the following factors:

> (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

Id. (quoting Brounstein, 979 F.2d at 954-55).

The evidence before us establishes that the IRS assessed a civil penalty against Plaintiff for Pennsylvania Gear's unpaid trust fund taxes for the third and fourth quarters of 2002. (Gov't Exs. 101-03.) There is also evidence that, as president of Pennsylvania Gear, Plaintiff could sign checks on behalf of that company and hire and fire employees. (Craig Stranahan Dep. at 41, 57.) Therefore, we find that there is no genuine issue of material fact as to whether Plaintiff was a "responsible person" subject to liability under § 6672.

The parties dispute whether Plaintiff willfully failed to pay the withholding taxes. For the purposes of § 6672(a), "willfulness is a voluntary, conscious and intentional decision to prefer other creditors over the Government. A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid." Greenberg, 46 F.3d at 244 (quoting Brounstein, 979 F.2d at 955-56) (internal quotation

marks omitted). Evil motive or bad purpose are not required; rather, willful failure to pay taxes embodies "[a]ny payment to other creditors . . . with knowledge that the employment taxes are due and owing to the Government." Id. (citing Hochstein v. United States, 900 F.2d 543, 548 (2d Cir. 1990); and Datlof v. United States, 252 F. Supp. 11, 32-33 (E.D. Pa. 1966)). All that is required for willfulness is that a responsible person "know that the taxes are due or act in reckless disregard of this fact when he fails to remit to IRS." Id.

The Government argues that Plaintiff willfully failed to remit Pennsylvania Gear's withholding taxes when he wrote a check for $43,600, payable to cash, on December 27, 2002, even though he signed the bankruptcy schedules that were filed by Pennsylvania Gear on December 16, 2002 and showed that Pennsylvania Gear owed payroll taxes of approximately $45,000.[2] The Government also argues that, at a minimum, Plaintiff must have recognized the grave risk that Pennsylvania Gear would be unable to pay its withholding taxes when he participated in the filing of Pennsylvania Gear's bankruptcy petition and schedules, and that Plaintiff therefore recklessly disregarded an obvious and known risk that the employment taxes might not be paid. Evidence

---

[2]Plaintiff argues that the Government did not produce copies of Pennsylvania Gear's checks until after the close of discovery and that the December 27, 2002 check is therefore inadmissible. In a letter to the Court dated July 12, 2010, he asks that we not consider checks that the Government did not provide to him before the close of the discovery period or, in the alternative, permit him to amend his response to the Government's Motion for Summary Judgment. Under Federal Rule of Civil Procedure 37(c), a party that fails to disclose information pursuant to Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." However, the records provided by the Government make clear that the checks in question were Pennsylvania Gear checks signed by Plaintiff, which Plaintiff would have been able to see and access well before the instant litigation. Consequently, Plaintiff cannot establish that he was harmed by the Government's failure to disclose these checks during discovery. Indeed, Plaintiff does not contend that he was prejudiced. Consequently, we conclude that the Government's failure to timely disclose these checks was harmless and deny Plaintiff's request to exclude the checks.

submitted by the Government establishes that, after Pennsylvania Gear filed for bankruptcy and listed its unpaid payroll taxes in the amount of $45,09 in its bankruptcy schedules, Plaintiff signed several checks that were paid from Pennsylvania Gear's checking account at Commerce Bank, including a check payable to cash in the amount of $43,600. (See Exs. 201, 301.)

Meanwhile, Plaintiff presents an entirely different account of his actions during the relevant time period. Plaintiff contends that there was no willful attempt to avoid the tax payment because he forwarded $168,672.49 of Pennsylvania Gear's funds to the bankruptcy trustee on January 8, 2003, for payment of taxes and other priority claims. In support of this argument, he points to his deposition testimony and the deposition testimony of Henry Stranahan, a Pennsylvania Gear shareholder, that any outstanding payroll taxes could have been (and he believes had been) paid using the funds he turned over to the bankruptcy trustee. (Craig Stranahan Dep. at 120-21; Henry Stranahan Dep. at 52.) He has also submitted lists and copies of checks totaling $168,672.49, which he asserts were turned over to the attorney for the bankruptcy trustee. (Pl.'s Ex. 105.) Plaintiff also relies on the bankruptcy trustee's conclusion, demonstrated by the Settlement Agreement, that there was no wrongdoing on the part of Pennsylvania Gear's officers. (Pl.'s Ex. 106.) Plaintiff asserts that, in accordance with this conclusion, the bankruptcy trustee entered into the Settlement Agreement, thereby unconditionally releasing all of Pennsylvania Gear's officers and affiliates from liability and assuming liability for any unpaid taxes. In addition, Henry Stranahan testified that he understood the Settlement Agreement to mean that the bankruptcy trustee would take responsibility for unpaid taxes. (Henry Stranahan Dep. at 62-63.)

Plaintiff further argues that the $43,600 check he wrote to cash on December 27, 2002 was intended for the benefit of H&W Associates, Pennsylvania Gear's landlord, and does not constitute

8

evidence of willful failure to pay Pennsylvania Gear's withholding taxes. By way of further explanation, Plaintiff provides evidence that, during the relevant time period, Pennsylvania Gear had several priority military contracts it was obligated to perform under the Defense Priority Allocation System[3] ("DPAS"), and the military provided funding in the form of progress payments that covered eighty percent of direct costs incurred but not payroll taxes. (Henry Stranahan Dep. at 57, 74-75.) Plaintiff contends that Pennsylvania Gear discontinued its commercial activities after filing for bankruptcy but continued its military activities (id. at 50-51), and, to that end, he used Pennsylvania Gear's funds, from those progress payments, to pay rent to H&W Associates.

## IV. CONCLUSION

There are genuine issues of material fact regarding whether Plaintiff willfully failed to pay Pennsylvania Gear's withholding taxes. The Government has submitted evidence showing that Plaintiff wrote checks that nearly emptied Pennsylvania Gear's bank account after it filed for bankruptcy and with the knowledge that it had filed for bankruptcy. Meanwhile, Plaintiff has supplied evidence that the bankruptcy trustee was provided enough money to cover the unpaid taxes, that the bankruptcy trustee assumed liability for the unpaid taxes, and that Pennsylvania Gear was obligated to continue performance of its military contracts notwithstanding its pending bankruptcy proceedings. Therefore, we deny the Government's Motion for Summary Judgment and Plaintiff's

---

[3]The Defense Priorities and Allocations System ("DPAS") regulations, codified at 15 C.F.R. §§ 700.1-700.93, "ensure[] the timely availability of industrial resources for approved programs and provide[] an operating system to support rapid industrial response to a national emergency." 15 C.F.R. § 700.1(d). Pursuant to the DPAS regulations, a contractor must accept the highest-priority orders to produce materials for military and homeland security programs. 15 C.F.R. § 700.13(a). Compliance with the DPAS regulations is required, and failure to do so may result in criminal penalties. 15 C.F.R. § 700.7(a).

Motion for Judgment on the Pleadings.  An appropriate Order follows.

BY THE COURT:


 /s/ John R. Padova
John R. Padova, J.